The PEOPLE of the State of Colorado, Complainant,

v.

James M. FRANKLIN, Respondent.

No. 04PDJ047.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Jan. 12, 2005.

Attorney Regulation. Upon conclusion of a sanctions hearing, the Hearing Board disbarred Respondent James M. Franklin (Registration # 6358) from the practice of law, effective February 12, 2005. In this proceeding, it was established through the entry of default that Respondent did not return client money entrusted to him after posting the client's bond. Rather, he kept the extra $9,900 in his possession. Without authorization, Respondent used a portion of that money to post his own bond after he was arrested. The client had difficulty collecting from Respondent, who ultimately retained $2,600. Also, Respondent did not cooperate in the investigation of this matter. Therefore, Respondent violated Colo. RPC 1.15(a) (failure to keep client funds separate), 1.15(b) (failure to deliver client property), 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), 3.4(c) (knowing violation of the rules of a tribunal), and 8.1(b) (failure to respond reasonably to a lawful demand for information from a disciplinary authority). According to the ABA *Standards for Imposing Lawyer Sanctions* and controlling Colorado Supreme Court precedent, disbarment is the presumptive sanction for knowing conversion of client property entrusted to an attorney. Respondent did not provide an explanation for his misconduct, and did not appear at the sanctions hearing to present evidence in mitigation. Although the Hearing Board considered the fact that Respondent has never been disciplined in 29 years of practice, it found no basis to deviate from the presumptive sanction. Respondent was also ordered to pay the costs incurred in conjunction with this proceeding.

On November 17, 2004, the Hearing Board consisting of ROBERT A. MILLMAN and FREDERICK Y. YU, both members of the bar, and WILLIAM R. LUCERO, Presiding Disciplinary Judge ("PDJ"), conducted a hearing pursuant to C.R.C.P. C.R.C.P. 251.18(d). Kim E. Ikeler appeared on behalf of the People. Neither Respondent nor counsel on his behalf appeared at the sanctions hearing. The Hearing Board issues the following opinion:

### REPORT, DECISION AND IMPOSITION OF SANCTION PURSUANT TO C.R.C.P. 251.15(b)

*SANCTION IMPOSED: DISBARMENT*

#### I. ISSUE

Absent mitigating circumstances, disbarment is generally appropriate when a

lawyer converts client property and the client is injured. ABA *Standards for Imposing Lawyer Sanctions*, 4.1 ("ABA Standards"). Here, Respondent took $10,900 from a client with instructions to post bond for the client. After posting bond, the client asked Respondent to return the money not used, $9,900. Respondent did not do so. However, in 29 years of practice, Respondent has never before been disciplined. Is this mitigating fact sufficient to warrant a sanction short of disbarment?

The Hearing Board concludes that disbarment is the appropriate sanction based upon its finding of one mitigating factor, four aggravating factors, and the need for public protection.

## II. PROCEDURAL HISTORY AND BACKGROUND

On April 29, 2004. Kim E. Ikeler, counsel for the Office of Attorney Regulation ("People") filed a Complaint with the Office of the Presiding Disciplinary Judge against attorney, James M. Franklin, ("Respondent"). On May 12, 2004, the People filed an Acceptance of Service of the Complaint. On June 14, 2004, the People moved for Default alleging Respondent had not filed an Answer to the Complaint. On July 14, 2004, the PDJ granted the People's Motion for Default. On August 10, 2004, the People filed a notification of Sanctions Hearing scheduled for November 17, 2004 on the Respondent. Respondent received this notification on September 7, 2004.

The record is clear that the People made multiple attempts, in addition to the formal service of the notice of sanctions, to communicate with the Respondent about his response to the allegations of the Complaint and to seek his cooperation in the disposition of these proceedings.

■ Since a default has been entered, all *factual allegations* and *rule violations* set forth in the Complaint are deemed admitted by clear and convincing evidence. *People v. Richards*, 748 P.2d 341, 347 (Colo.1987) *See also* the complaint, attached as Exhibit A. The Hearing Board must nevertheless determine the appropriate sanction.

## III. FINDINGS OF VIOLATIONS

Respondent has taken and subscribed the oath of admission, was admitted to the bar of this Court on May 19, 1975, and is registered as an attorney upon the official records of this Court, registration number 06368. The Respondent is thus subject to the jurisdiction of this Court.

On December 4, 2002, Respondent received $10,900 from a client, Mr. Junior. Mr. Junior directed Respondent to use this money to post Mr. Junior's bond in a pending criminal case, and to return the balance. The court set Mr. Junior's bond at $1,000. After Respondent posted the bond, this left $9,900 in Respondent's possession to return to Mr. Junior.

On the same day Respondent posted the bond for Mr. Junior, Respondent needed money to post bond on his own case after he was taken into custody on an outstanding warrant. Without his client's permission, Respondent used $1,000 of Mr. Junior's funds to post his own bond.

Two days later, Mr. Junior met with Respondent and asked for the return of his money, $9,900. Respondent returned a portion of Mr. Junior's money, $4,800, in cash. Respondent, however, told Mr. Junior that he did not have the entire amount to return. Respondent and Mr. Junior then agreed that Mr. Junior would pay Respondent $500.00 for his services at the bail bond hearing and a subsequent hearing in Arapahoe District Court. Respondent agreed to pay Mr. Junior the $4,600 he still owed him. Respondent gave Mr. Junior a check for $3,600 and said he would later pay him the balance of $1,000. Respondent's check bounced. Respondent later paid Mr. Junior an additional $2,000 in January 2003. After this payment Respondent still owed $2,600 of the $10,900 Mr. Junior originally entrusted to the Respondent. Since January 2003, Mr. Junior has made numerous attempts to accommodate Respondent in the repayment of these funds. Respondent, however, has failed to repay the $2,600 he still owes Mr. Junior.

After the People initiated an investigation of this matter, they sought the Respondent's

cooperation. He has not cooperated ·with them, nor has he provided the Hearing Board any explanation for his conversion of Mr. Junior's money.

## IV. SANCTIONS

### Analysis Under ABA Standards 3.0

#### 1. Duty

The Respondent violated ethical duties to his client, the public,. and profession. His duty of loyalty to his client required that he preserve property entrusted to him by the client. He owed a duty to the public to exhibit the highest standards of honesty and integrity. He also owed a duty to the profession to maintain its integrity. He breached each of these duties.

#### 2. Mental state

Respondent was aware that he had misappropriated funds belonging to Mr. Junior. Two days after receiving $10,900 from him, Respondent acknowledged that he owed Respondent $9,900, the balance after posting a $1,000 bond for Mr. Junior. He has not paid Mr. Junior the full amount he owes him, although Mr. Junior has tried numerous times to work out a payment schedule.

#### 3. Injury

Respondent's client suffered actual injury. Respondent failed to account for the monies entrusted to him, failed to return the $9,900 when requested, and then presented an insufficient funds check to his client as a partial payment of funds he owed. As of the date of the sanctions hearing, Respondent still had not paid back the final $2,600 he owed to Mr. Junior.

#### 4. Aggravating and Mitigating Factors

##### Aggravating Factors, Standards 9.2

As in all default cases, the Hearing Board must rule on the evidence presented. Respondent has offered nothing in defense of the charges against him.

##### A.· Dishonest or Selfish Motive

Respondent retained client money that did not belong to him and used $1,000 of his client's money for his own bond without authority to do so. Keeping client money under these circumstances is patently dishonest and selfish.

##### B. Vulnerability of Victim

Mr. Junior was especially vulnerable to a breach of trust because he had been a friend of the Respondent. Therefore, he trusted the advice that Respondent gave him, did not press him for the return of the funds immediately, and waited some period before coming forward with a complaint against the Respondent.

##### C. Substantial Experience in the Law

Respondent has more than 29 years experience in the practice of the law as a deputy district attorney and a member of the district court bench in El Paso County, Colorado.

##### D. Indifference to Making Restitution

Respondent has failed to pay his client the full amount owed, despite the latter's willingness to work out a payment schedule with Respondent. Moreover, Respondent appears to be indifferent to making restitution. Despite the constant efforts on the part of Mr. Junior and the People to secure payment of the remaining $2,600 Respondent owes, a significant amount of time has lapsed from the date Respondent should have returned the money.

##### Mitigating Factors, Standards 9.3

##### A. No Prior Discipline

Respondent has had no prior· discipline in 29 years in practice.

#### Analysis Under Case Law

 ABA *Standards* 4.1 states that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. Our case law on this point is in accord with the *Standards.* The Colorado Supreme

Court stated in *People v. Varallo*, 913 p.2d 1, 10–11 (Colo.1996) as follows:

> As the New Jersey Supreme Court held in *In re Roth*, 140 N.J. 430, 658 A.2d 1264, 1272 (1995): Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation. Moreover, "[i]ntent to deprive permanently a client of misappropriated funds, however, is not an element of knowing misappropriation." *In re Barlow*, 140 N.J. 191, 657 A.2d 1197, 1201 (1995).

The Hearing Board distinguishes this case from *People v. Fischer*, 89 P.3d 817 (Colo. 2004). In *Fischer*, the Supreme Court found many mitigating factors not present here. These include the Respondent's recognition of his ethical violations, acceptance of responsibility for the injuries he caused to others and the judicial system, cooperation with Attorney Regulation Counsel, his genuine remorse, and repayment of all misappropriated funds. *Id* at 820. In light of these mitigating factors, the Supreme Court reversed the Hearing Board's order of disbarment and suspended the Respondent for one year and a day.

## V. CONCLUSION

After reviewing the factors listed in ABA *Standards* 3.0, the Hearing Board finds that disbarment is the appropriate sanction. When a lawyer converts client funds and offers no explanation for his conduct, the Hearing Board is left with no basis to vary from the *Standards*. The Respondent's lack of prior discipline is the sole mitigating factor. This factor, standing alone, is insufficient to warrant a lesser sanction where the evidence shows the lawyer has converted client funds and has been indifferent, at best, to repaying all the money owed his client.

## VI. ORDER

It is therefore ORDERED:

1. JAMES M. FRANKLIN, attorney registration 06358, is DISBARRED from the practice of law effective thirty-one (31) days from the date of this Order and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. JAMES M. FRANKLIN is ORDERED to pay the costs of this proceeding; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days in which to respond.

### EXHIBIT A

COURT USE ONLY

Case Number: 04PDJ047

Kim E. Ikeler, # 15590, Assistant Regulation Counsel, John S. Gleason, # 15011, Regulation Counsel, Attorneys for Complainant, 600 17th Street, Suite 200–South, Denver, Colorado 80202.

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

#### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on May 19, 1975, and is registered upon the official records of this court, registration no. 06358. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 19670 Top O the Moor Dr. E., Monument, CO 80132.

#### General Allegations

2. On or about December 3, 2002, complainant Ralph X. Junior ("Junior") engaged respondent James M. Franklin to represent

him in a bail bond hearing related to a trespassing charge filed against Junior in Arapahoe County. An attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

3. Prior to retaining respondent, Junior had arranged with the Arapahoe County Sheriff's Department to be taken into custody at approximately 5:00 p.m. on December 4, 2002. Junior was held overnight in the Arapahoe County Jail pending a bail bond hearing the following day on December 5, 2002.

4. On December 4, 2002, after withdrawing $10,000.00 from his homeowner's line of credit, Junior provided respondent with $10,900.00 in cash for the sole purpose of posting Junior's bond pending the outcome of the bond hearing. At the hearing Junior's bond was set at $1,000.00. Respondent posted that amount from the funds provided to him, and Junior was released from custody later that day.

5. Respondent also was taken into custody on that day for an outstanding warrant for his arrest. Respondent used $1,000.00 of the funds Junior entrusted to him to post his own bail.

6. On December 6, 2002, Junior met with respondent at Junior's home to obtain a refund of the balance of $9,900.00 due to Junior. At that meeting, respondent disclosed that he did not have the entire amount of $9,900.00. He returned a sum of $4,800.00 in cash. After further discussion Junior agreed to pay respondent $500.00 for his services at the bail bond hearing and a subsequent hearing in the Arapahoe District Court. Junior informed respondent that he would seek the services of another attorney to represent him in the continuing litigation.

7. At the same meeting, respondent also agreed to repay Junior the balance of money owed to him ($4,600.00). Respondent gave Junior a check for the sum of $3,600.00 and informed Junior that respondent would pay Junior the remaining balance of $1,000 when respondent received a refund of the $1,000.00 bail he posted for himself with Junior's money. Respondent also asked Junior to hold respondent's check until he could clear up some personal financial issues. Junior agreed to this request for a delay in cashing the check. On December 23, 2002, Junior deposited the $3,600.00 check into Junior's personal checking account. The check was returned for non-sufficient funds on December 27, 2002.

8. Junior contacted respondent regarding the returned check. Respondent subsequently paid Junior an additional $2,000.00 in January 2003. Junior has never received the remaining $2,600.00.

9. Junior filed his request for investigation on February 12, 2004. On the same day, the Office of Attorney Regulation Counsel ("OARC") sent the request for investigation via certified mail to respondent's registered address. On February 13 and again on February 17, 2004, undersigned counsel left messages for respondent at his registered telephone number for him to call concerning the request for investigation.

10. On February 19, 2004, undersigned counsel sent to respondent's registered address a Notice to Take Deposition of James M. Franklin, with attached Subpoena *duces tecum* requesting that the respondent produce his file and billing statements related to his representation of Ralph X. Junior. Undersigned counsel also placed the Notice of Deposition and Subpoena with a process server to attempt personal service upon respondent.

11. On February 26, 2004, respondent accepted the certified mailing of the request for investigation. Respondent did not communicate with OARC regarding the request for investigation at that time. On February 28 and 29, 2004, the process server attempted service upon respondent at his registered address, without success.

12. On March 5, 2004, undersigned counsel attempted to call respondent at his registered telephone number. The number had been disconnected.

13. On March 11, 2004, undersigned counsel received a call from respondent. Respondent promised to file a response to the request for investigation by March 15.

14. On March 15, 2004, respondent hand-delivered to OARC's offices a two-paragraph letter, responding to the request for investigation. Respondent made a vague reference to having engaged in "strategic discussions" with his former client, complainant Junior, but did not respond to Mr. Junior's specific allegations that respondent had converted $2,600 of Mr. Junior's funds. Nor did respondent produce the documents he had been requested to produce by the Subpoena *duces tecum.*

15. On March 16, 2004, undersigned counsel wrote to respondent, directing respondent to respond in detail to the request for investigation and to produce his file regarding Mr. Junior and his billing records. Because of the serious nature of Mr. Junior's charges, undersigned counsel requested that respondent respond by the close of business on Friday, March 19th. Respondent has not communicated with OARC since.

## CLAIM I

**(Failure to Keep Client Funds Separate From the Lawyer's Own Property and Negligent Conversion of Client Funds—Colo. RPC 1.15(a))**

16. Paragraphs 1 through 15 are incorporated herein as if fully set forth.

17. Colo. RPC 1.15(a) provides that an attorney is required to hold the property of clients that is in an attorney's possession separate from the attorney's own property.

18. By using Junior's funds for his own purposes, including posting of a bond for himself, the respondent failed to keep client funds separate from his own property.

19. The respondent did not have Junior's consent to use Junior's funds for personal purposes.

20. The respondent exercised unauthorized dominion or ownership over Junior's funds.

21. By exercising unauthorized dominion or ownership over client funds, the respondent converted and/or misappropriated such funds.

22. By such conduct, the respondent violated Colo. RPC 1.15(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

**[Failure to Deliver Client Property— Colo. RPC 1.15(b) ]**

23. Paragraphs 1 through 15 are incorporated herein as if fully set forth.

24. Rule 1.15(b), Colorado Rules of Professional Conduct, provides in pertinent part: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client, deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, render a full accounting regarding such property."

25. Respondent has not delivered to Junior $2,600 of Junior's funds, despite Junior's repeated requests that he do so.

26. By such conduct, the respondent violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

**[An Attorney Shall Respond to a Request By the Regulation Counsel for Information Necessary to Carry Out the Performance of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]**

27. Paragraphs 1 through 15 are incorporated herein.

28. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

29. The respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel for information from the respondent. Respondent failed to meaningfully respond to the request for investigation and failed to attend his noticed deposition. He has not produced the documents requested in the Subpoena *duces tecum*.

30. The respondent knew or should have known that he was failing to cooperate and respond to the request by Attorney Regulation Counsel.

31. By such conduct, the respondent violated C.R.C.P. 251.5(d).

32. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

33. As an attorney licensed to practice law in the state of Colorado, the respondent knew or is presumed to know of the obligation to respond to a request by the Attorney Regulation Counsel as set forth in C.R.C.P. 251.5(d).

34. Nevertheless the respondent knowingly disobeyed such obligation, and made no open refusal to obey that was based on an assertion that no valid obligation existed.

35. By such conduct, the respondent violated Colo. RPC 3.4(c).

36. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

37. The respondent knowingly violated the rule by failing to respond to the lawful demands for information made by Attorney Regulation Counsel during the investigation of the subject matter of this disciplinary proceeding.

38. The information sought did not require disclosure of information otherwise protected by Colo. RPC 1.6.

39. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information.

40. By such conduct, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IV

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

41. Paragraphs 1 through 15 are incorporated herein.

42. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

43. Respondent used Junior's funds for respondent's own purposes and failed and refused to return the funds when Junior requested them.

44. The respondent knew that he was keeping $2,600 of funds he had not earned, knowing that such funds should be returned to his client because he had not earned them and knowing that keeping such funds was not authorized.

45. The respondent did not have permission from Junior to use his funds for respondent's personal purposes.

46. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

47. Through his conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

48. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified

above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.