The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Jerome Rashad McCLAIN,
Defendant–Appellee.

No. 06SA268.

Supreme Court of Colorado,
En Banc.

Jan. 8, 2007.

Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Rhoda T. Hafiz, Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Stefanie Gaffigan, Deputy State Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

In this interlocutory appeal taken pursuant to C.A.R. 4.1, we review a suppression order from the Adams County District Court. We find that the trial court erroneously suppressed cocaine the defendant allegedly disposed of prior to being arrested, and we therefore reverse the order suppressing the cocaine.

## I. Facts and Procedural History

The defendant, Jerome McClain, has been charged with Possession of a Controlled Substance—Schedule II—More Than One Gram, a class four felony;[1] Possession of a Controlled Substance—Schedule II—More Than One Gram—Second Offense, a class two felony;[2] and Possession of Marihuana—One Ounce or Less, a class two petty offense.[3]

The facts of this case, as found by the trial court, are as follows. At approximately 2:10 p.m. on February 6, 2006, two police officers from the Aurora Police Department were traveling eastbound in their vehicle on Colfax Avenue, in an area the officers considered to be a "high-drug area," when they noticed a group of three black males walking together on the sidewalk. The police officers returned westbound to the same area approximately

1. § 1818405(1), (2)(a)(I)(A), C.R.S. (2006).

2. § 1818405(1), (2)(a)(I)(B), C.R.S. (2006).

3. § 1818406(1), C.R.S. (2006).

twenty minutes later, at 2:30 p.m., and noticed one of the same males walking along the sidewalk, this time with McClain. The officers then pulled into a parking lot and parked nose-to-nose with another vehicle parked in the lot. After the officers stepped out of their vehicle, they saw McClain throw something to the ground, which one of the officers identified to be a clear plastic baggy. The officers were somewhere between fifteen and thirty feet away from McClain when this happened.

The trial court found that, prior to the throwing down of the clear plastic baggy, neither of the officers saw McClain or his companion do anything the officers believed to be criminal activity. One of the officers testified at the motions hearing that the officers pulled over to speak with McClain and his companion because McClain's companion was walking in an "idle state of mind" and, in the officer's experience, "these particular people ... basically are up to no good." Although neither officer saw the men do anything illegal, upon seeing the baggy thrown the officers told McClain to come over to them. McClain complied and one of the officers placed him in handcuffs.

While McClain was being handcuffed, the other officer approached McClain's companion. The companion ran away and the officer chased the man. Upon this happening, the officer handcuffing McClain placed McClain in the police car and drove off to assist in apprehending the companion. After apprehending the fleeing companion, the officers returned to the original location and retrieved the clear plastic baggy, which one of the officers believed contained cocaine. McClain was then taken to the Aurora Police Department. At the Police Department, McClain was asked whether he had anything else on him; he admitted to having a small amount of marijuana hidden in his shoe.

McClain filed motions to suppress all evidence and statements, arguing that his stop and arrest were unconstitutional. After conducting a motions hearing on August 18, 2006, the trial court granted the defense motions and suppressed all evidence, statements, and observations of the police. The trial court based the suppression of the evidence, including the cocaine, on its finding that the police lacked probable cause to arrest McClain. In this interlocutory appeal, the People request that this court reverse the trial court's suppression of the cocaine,[4] arguing that McClain was not seized at the time he abandoned the cocaine and therefore the cocaine was not the fruit of an unlawful arrest. Because we agree with the People's argument on this point, we reverse the trial court's suppression of the cocaine.

## II. Analysis

■■■ In reviewing a suppression order, this court defers to the trial court's findings of historical fact and will not disturb those findings if they are supported by competent evidence in the record. *Outlaw v. People,* 17 P.3d 150, 155 (Colo.2001); *People v. D.F.,* 933 P.2d 9, 14 (Colo.1997). We will, however, correct a conclusion of law by the trial court that is "inconsistent with or unsupported by evidentiary findings," as well as the trial court's application of an erroneous legal standard. *People v. Quezada,* 731 P.2d 730, 732–33 (Colo.1987).

■■■ Both the United States and the Colorado Constitutions protect citizens against unreasonable searches and seizures. *People v. Archuleta,* 980 P.2d 509, 512 (Colo. 1999). Seizure of a person requires "either

4. The trial court ordered the suppression of both the cocaine and the marijuana retrieved from the defendant at the police station. The People's appeal, however, appears to only contest the suppression of the cocaine. In its Notice of Interlocutory Appeal, the People proposed the following two issues:

(1) Did the trial court erroneously apply the exclusionary rule in granting the defendant's motion to suppress the suspected controlled substances even though the defendant had discarded the suspected controlled substances be-

fore he was seized within the meaning of the Fourth Amendment.
(2) Was the trial court's decision to suppress the government's evidence, contrary to the applicable case law and the evidence presented at the suppression hearing.
Only the cocaine was "discarded," and the briefing of the parties focused exclusively on the cocaine. We do not believe that the People have appealed the suppression of the marijuana, and consequently we address only whether the trial court correctly suppressed the cocaine.

physical force ... or, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A necessary condition for a seizure effectuated through a show of authority is that "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 628, 111 S.Ct. 1547 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). An arrest is the quintessential seizure of a person and must be supported by probable cause. *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo. 1989). An investigatory stop also amounts to a seizure of the person but can be justified on less than probable cause. *Outlaw*, 17 P.3d at 156. An investigatory stop survives constitutional scrutiny if three conditions are met: (1) there is an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion is reasonably related to its purpose. *Trujillo*, 773 P.2d at 1089.

In this case, the trial court found that the police seized McClain when they handcuffed and arrested him. In issuing its order, the trial court stated:

> [B]efore approaching and asking any questions or simply asking the defendant to come over and stand by and going over and retrieving the baggy in this case, the defendant is handcuffed.... And he is arrested, I find *at that point.* He is seized, he is no longer free to go....
>
> ... [The officer] said, "I saw [defendant] throwing something to the ground, I didn't think [defendant] was supposed to have it," so basically [the officer] cuffed [defendant].
>
> I'm going to find that [defendant] *was seized at that time....*

(Emphasis added). The trial court found that the police lacked sufficient probable cause to arrest McClain. As a result of the unconstitutional arrest, the trial court suppressed all of the evidence obtained by the police, including the clear plastic baggy containing cocaine that McClain had discarded prior to being arrested.

■ The record amply supports the trial court's conclusion that McClain was seized when he was handcuffed and we do not disturb that holding. The police officers had no physical contact with McClain prior to his arrest. Therefore, McClain could have been seized prior to his arrest only if he had submitted to a show of authority by the officers. *Hodari D.*, 499 U.S. at 626, 111 S.Ct. 1547 (seizure of a person occurs only when there is physical force or submission to an assertion of authority). Although the trial court found that McClain submitted to the officers' request that he come over to them, the trial court also found that McClain discarded the clear plastic baggy before the officers called him over. Prior to McClain discarding the baggy, the officers did not have contact with either McClain or his companion. McClain was thus not "seized" for Fourth Amendment purposes prior to his arrest.

■ For the purpose of this limited appeal, we assume, without deciding, that the officers lacked probable cause to arrest McClain and therefore the arrest was unconstitutional. The normal remedy for an unconstitutional seizure is to suppress all evidence obtained as a direct result of the illegal seizure. *Trujillo*, 773 P.2d at 1090. The cocaine in this case was not the fruit of an illegal seizure, however, because McClain dropped the cocaine prior to being seized. The United States Supreme Court made this rule clear in *California v. Hodari D.*:

> [A]ssuming that [the police's] pursuit in the present case constituted a "show of authority" enjoining [the defendant] to halt, since [the defendant] did not comply with that injunction he was not seized until he was tackled. *The cocaine abandoned while he was running was in this case not the fruit of a seizure,* and his motion to exclude evidence of it was properly denied.

499 U.S. at 629, 111 S.Ct. 1547 (emphasis added).

In Colorado, we have long recognized that evidence which is abandoned prior to a seizure is not the fruit of that seizure. *Johnson v. People*, 171 Colo. 150, 152, 465 P.2d 128, 129 (1970) ("We hold that this is not a case of unlawful search and seizure. In fact there was no search and seizure, as such; rather this is a situation where the defendant aban-

doned his property before any search and seizure ever materialized."); *People v. T.H.*, 892 P.2d 301, 303 (Colo.1995) ("[T]he cocaine was abandoned while T.H. was fleeing and before T.H. was stopped or arrested. Therefore, the cocaine was not the fruit of a seizure and was lawfully recovered by the police."); *People v. Evans*, 886 P.2d 288, 290 (Colo.App.1994) ("In sum, the evidence in question was abandoned before any seizure occurred, and it was therefore lawfully recovered by the police."). The trial court therefore committed error in suppressing the cocaine that was abandoned prior to McClain's seizure.

 McClain urges this court to find that the police officers' actions—driving by him and his companion, parking in a lot near where he and his companion were walking, and simultaneously exiting the police vehicle—amounted to a show of authority by the police officers sufficient to seize him. McClain argues that this seizure was not supported by a reasonable suspicion of criminal activity and therefore the cocaine should be suppressed.[5] McClain relies on our decision in *Outlaw v. People* to support his position. We find McClain's argument unpersuasive.

In *Outlaw*, this court had to decide whether Outlaw had been seized through an investigatory stop, or whether his interaction with the police amounted to nothing more than a consensual encounter that does not raise constitutional concerns. 17 P.3d at 155–56. We found that Outlaw was in fact seized. *Id.* at 156. Outlaw was walking along the sidewalk with a group of other people when police officers drove their patrol car onto the sidewalk and followed the group at close range for twenty to thirty feet. *Id.* After pulling the patrol car off of the sidewalk, the police continued to follow alongside the group while driving in the wrong lane of traffic. *Id.* We

found that this conduct with the patrol car amounted to a show of authority. *Id.*

Importantly, however, Outlaw was not actually seized until the police officers called him over to the patrol car and he obeyed that order. *Outlaw*, 17 P.3d at 156. It was not until *after* Outlaw was seized that the police noticed plastic protruding from his hand, later discovered to contain cocaine, that he then dropped on the ground. *Id.* at 154 ("As Outlaw approached the [patrol] car on the driver's side, his left hand remained closed. The officer saw what appeared to be a small piece of clear plastic protruding from that hand. Outlaw then made a sweeping motion with his closed hand, dropping it out of view for a moment."); *see also id.* at 157 ("[T]he officers did not see anything in Outlaw's hand until after the seizure had taken place...."

 Based on the trial court's factual findings in this case, we are not convinced that the conduct of the police officers here rose to the same level as that of the officers in *Outlaw*. Even if the officers here made a show of authority, the trial court found that McClain dropped the clear plastic baggy *before* the officers called him over and seized him. Unlike *Outlaw*, where the evidence was discovered only after the defendant was seized, here the officers saw McClain dispose of the cocaine prior to seizing him. This factual finding is critical because, as explained above, evidence abandoned prior to a seizure is not the fruit of that seizure; therefore, even if the seizure is unconstitutional, the abandoned evidence should not be suppressed.

### III. Conclusion

McClain dropped the cocaine at issue prior to being seized. Consequently, the cocaine was not the fruit of the seizure and, even

---

5. McClain further argues that the officers' decision to pull their patrol car over to speak with him and his companion was made because McClain and his companion are African–American. Selective enforcement of the law based on racial considerations is, of course, constitutionally unacceptable under the Equal Protection Clause. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Fourth Amendment analysis, however, does not take into account the subjective intentions of law enforcement, even if those subjective intentions are discriminatory. *Id.* An objective analysis of this case leads to the conclusion that McClain was not "seized" for Fourth Amendment purposes when he discarded the cocaine because, at that point in time, he had neither submitted to a show of authority by the police officers nor had the police officers used physical force. This factual determination disposes of the case.

assuming the trial court was correct in holding that McClain's arrest was unconstitutional, should not have been suppressed. We therefore reverse the trial court's suppression of the cocaine and remand this case for proceedings consistent with this opinion.

Justice MARTINEZ dissents and Justice BENDER joins in the dissent.

Justice MARTINEZ, dissenting.

The majority concludes that McClain was not seized until after he dropped a clear plastic bag, thus legitimizing a stop made under troubling circumstances. After a careful review of the facts in this case and our controlling legal authority, I conclude that the determinative facts of this case are unclear and neither the record nor the trial court's findings are sufficient to permit adequate appellate review. This case should be remanded for the creation of an adequate record upon which we can base our holding. Because the record does not support an outright reversal, I respectfully dissent.

We can say that the following facts are clear from the record: two uniformed police officers were patrolling in their police cruiser in the middle of a weekday afternoon, when they saw two African–American men, McClain and another, walking eastbound on the sidewalk of East Colfax. When asked, the driver of the patrol car testified they intended to stop the men because: "It's been ... [my] experience within the area that these particular people, you know, basically are up to no good." He later added that McClain's companion was walking in "an idle state of mind."

Both officers testified that neither man did anything illegal; neither did anything unusual or even changed their stride or gait when the patrol car slowed down as it passed by them; neither man flagged down cars, argued, fought with others, contacted passersby, or exchanged money with anyone on the street.

Nonetheless, the officers decided to stop and question the men. The reason one officer gave, while on the stand, for deciding to stop the men was that he "had a feeling that

[the men were] up to no good." He explained to the court that he slowed the patrol car to a speed of ten to fifteen miles per hour as they passed the men, and "had to make a U-turn, in which time that's when we cut them off." The other officer testified that they pulled in "nose-to-nose" with another car and that the men would have to pass by the vehicle to go on their way.

The prosecuting attorney had one officer make a diagram that described what the officer meant when he testified that they pulled in "nose-to-nose" with another car and "cut-off" McClain and his companion. Though the diagram was entered into evidence, we do not have that diagram before us. Without the diagram, it is impossible to determine from the record if the officers' vehicle blocked the sidewalk preventing McClain from continuing forward without stepping around the officers' car, or if the vehicle merely crossed the line of travel but did not actually block their path. Both officers testified that as they pulled up to the men, McClain ended up behind another parked car.

In describing what happened next, both officers said that they had to call out to the men and order them to come over *and* that they had to walk toward the men to arrest them.[1] The trial court's findings indicate only that the officers ordered him over, that McClain approached the officers and was handcuffed, but not that the officers approached McClain. Thus, it is not clear whether McClain stopped and had to be ordered over and was also approached by the officers, or whether McClain kept walking and the officers' order merely reinforced what their actions had already conveyed: that the officers wanted to talk to the men. We know from both testimony and the trial court's findings that McClain was observed throwing something to the ground. While McClain was patted down and placed in handcuffs, McClain's companion ran away but was caught. They were both arrested and the bag was found, which later was determined to be a controlled substance.

---

1. One officer was specific about this point:
 Q: Mr. McClain eventually walked over to you ... ?

A: Actually, we walked over to him.

There are at least three possible scenarios surrounding the officers' description of what happened: 1) that McClain stopped walking and dropped the bag, and had to be ordered over, or 2) that he stopped walking just after dropping the bag and had to be ordered over, or 3) he kept walking as the officers ordered him over and dropped the bag along the way. As I explain below, the first two would be evidence that he was seized before he dropped the bag, the third may also be evidence he was seized before he dropped the bag, but presents a more ambiguous case.

The trial court, interpreting these facts, seems to have concluded that the men were seized prior to being arrested as part of an evolving investigatory stop. The trial court also suggests that McClain's pre-arrest seizure was justified by reasonable suspicion. In any event, the court went on to hold that the officers lacked probable cause to escalate the seizure into an arrest, and suppressed all statements and evidence. However, it is impossible to determine from the trial court's findings, or from the officers' testimony, whether McClain was seized before or after he dropped the bag. Other aspects of the record are clear however.

The record clearly reflects through the officers' testimony that neither man was doing anything illegal or acting in any manner to justifiably arouse the officers' suspicion. Further, the officer's derogatory comments, referring to the men as "these particular people," having "an idle state of mind," and labeling them being "up to no good" by walking down the street, are troubling. Because he made these comments to justify stopping McClain and his companion, this case calls for a careful examination of our Fourth Amendment jurisprudence. Unfortunately, a close examination of the record and the trial court's order fails to clarify the issues raised by this troubling stop.

## I. Consensual Encounters Between Police and Citizens

When a citizen has an encounter with law enforcement officials, the encounter is consensual only if a reasonable person would feel free to leave and ignore or disregard the officer and continue on their way. *See Michigan v. Chesternut,* 486 U.S. 567, 573–74, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *Outlaw*

*v. People,* 17 P.3d 150, 156 (Colo.2001); *People v. Cascio,* 932 P.2d 1381, 1385 (Colo.1997). The right of every citizen to remain free from unreasonable government intrusion when they walk the streets remains a bulwark of our ordered liberty. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(citing *Union Pac. R. Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891)). Courts have the responsibility to protect individuals from police conduct that is over-bearing, harassing, or offensive to personal liberty without the objective evidentiary justification required by constitutional safeguards. *Terry,* 392 U.S. at 15, 88 S.Ct. 1868.

We require officers to have a reasonable articulable suspicion that criminal activity is afoot before seizing a citizen on the street, even for investigatory purposes, in order to protect citizens from police conduct offensive to the Fourth Amendment of the United States Constitution and Colorado's Constitution, article II, section 7. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868; *People v. Padgett,* 932 P.2d 810, 813 (Colo.1997). Absent a reasonable suspicion, it is illegal for the police to seize an individual walking down the street minding his own business, unless that individual consents to stop and talk with the police. *Outlaw,* 17 P.3d at 159. The police may not detain an individual, even momentarily, without reasonable grounds for the detention. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). We make an objective determination of reasonableness by examining the totality of the circumstances surrounding the encounter. *Id.* at 155.

There is no per se rule that designates specific conduct as a seizure. *People v. Paynter,* 955 P.2d 68, 73 (Colo.1998). The United States Supreme Court has recognized that "this test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Chesternut,* 486 U.S. at 573, 108 S.Ct. 1975. Accordingly, a trial court must examine "the behavior of the parties, as well as the physical, temporal, and social context of the encounter." *Outlaw,* 17 P.3d at 156. Thus, we examine the officers'

actions and behavior, from an objective point of view, and determine, under the totality of the circumstances, whether a reasonable person would no longer feel free to leave. Critical to this analysis is knowing whether the officers' show of authority was sufficient to effectuate a seizure and whether McClain subsequently submitted.

## II. Show of Authority

When officers make a show of force or authority that a reasonable person would submit to, the suspect is seized. *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Normally, the subjective intent of the officers to stop or detain an individual is not considered when determining if a stop occurred. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). While the Equal Protection Clause of the United States Constitution is violated by selective enforcement of the law based on race, the Fourth Amendment is not. *Id.* However, the subjective intent of the officer to seize a person *is relevant* when that intent is demonstrated objectively, by the officer's behavior, and conveyed to the seized person. *See Royer*, 460 U.S. at 501–02, 103 S.Ct. 1319 (finding that when officers identify themselves, tell the defendant he was suspected of transporting narcotics, and retain his identification documents, defendant was effectively seized by that show of authority). However, when a person runs away from the police's show of authority, he cannot be seized by a mere show of authority, but must instead be physically detained by the police before they are considered legally seized. *California v. Hodari D.*, 499 U.S. 621, 627, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).[2]

Here, the officers' show of authority may have seized McClain: the officers slowed down their vehicle, made a U-turn and then quickly parked nose-to-nose with another car in such a way as to "cut-off" McClain. Next, the police officers stepped out of the car looking directly at McClain and his companion. Both officers testified they intended to

seize McClain, and their actions may have been consistent with their intent. McClain responded by staying at the scene; his companion ran. Thus, both McClain and his companion responded to the officers' objective demonstration of their intent to stop the men.

The United States Supreme Court and the Colorado Supreme Court have both recognized that an officer's operation of his patrol car in an aggressive manner to block a defendant's course of travel or otherwise control his direction of movement is a sufficient show of force to seize a person. *Chesternut*, 486 U.S. at 575, 108 S.Ct. 1975 (distinguishing the facts of its case and concluding that a seizure could have occurred if the officers had used the patrol car in an aggressive manner to block the defendant's direction of travel); *Outlaw*, 17 P.3d at 156 (holding that the police seized the defendant when they drove on the sidewalk behind the defendant, followed alongside him in the wrong lane of traffic, and ultimately called the defendant over to the patrol car).

The officers' actions here could easily be a legally sufficient show of force. Like the officers in *Outlaw*, the officers here used the car to alter the direction of travel of the men. They did so right in front of the men and they exited the car while looking directly at them. It appears likely that McClain understood the officers' intent to stop and talk with him because his actions seem to indicate that he knew the officers were going to talk to him regardless of his consent.[3] The problem is that we do not know, from the record of the trial court's findings, what the officers actually did to "cut-off" McClain. If McClain's direction of travel was blocked and he stopped walking before he dropped the bag, the officers' actions would be sufficient to seize McClain under our Fourth Amendment jurisprudence. If they did not block the sidewalk and McClain kept walking toward the officers without stopping, he may have consented to speak with them. Thus, we cannot, on these scarce facts and in good

---

**2.** Thus, *Hodari D.* merely stands for the obvious but limited proposition that a person is not seized if they run from an officer's show of authority. *Hodari D.*, 499 U.S. at 626, 111 S.Ct. 1547.

**3.** This is especially clear in light of both officers' testimony and their actions at the scene, i.e., the pursuit and subsequent capture of McClain's companion.

conscience, definitively decide whether the officers' show of force was sufficient to seize McClain before he dropped the bag.

### III. Submission to Authority

In many cases, an officer's show of force is sufficient by itself to seize a person, such as when officers physically grab or tackle someone. *Hodari D.*, 499 U.S. at 628, 111 S.Ct. 1547. When officers assert their authority without physical force, courts also look toward the suspect's actions for an objective indication of submission to the officer's show of force. *Id.* For example, a person is seized if they respond to a command to come back and talk with officers. *Padgett*, 932 P.2d at 816. We have also found that a person is seized by officer actions that objectively convey to the suspect that they intend to seize a person and that person demonstrates he understands himself to be seized. *Outlaw*, 17 P.3d at 156 (finding that a suspect was seized after "the police made a show of force by their conduct with the car that altered Outlaw's direction of travel"); *see Hodari D.*, 499 U.S. at 628, 111 S.Ct. 1547 (implicitly holding that a show of authority that produces a stop is a seizure under the Fourth Amendment); *Royer*, 460 U.S. at 501–02, 103 S.Ct. 1319 (holding that a person is seized when their means of escape is obstructed by the authorities). On the other hand, a person is not seized if they run away. *Hodari D.*, 499 U.S. at 628, 111 S.Ct. 1547. Therefore, determining whether a person is seized by a show of force, absent the use of physical force, requires a fact-specific inquiry focusing on the person's response to the officer's conduct.

If a person is standing still on a sidewalk, and an officer walks up to him, he is not seized. *Royer*, 460 U.S. at 497, 103 S.Ct. 1319. However, if an officer draws his gun and then orders the person to take his hands out of his pockets, he is seized whether or not he obeys. *People v. Mack*, 33 P.3d 1211, 1215 (Colo.App.2001), *cert. denied*, (Oct. 29, 2001). Alternatively, if a person is walking on a sidewalk and an officer blocks his path and calls him over, he is seized if he walks toward the officers, but not seized if he walks away. *Outlaw*, 17 P.3d at 159; *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir.2002). Finally, a delay in submission to a show of authority does not mean that the suspect was not seized prior to his manifestation of submission. *See United States v. Taylor*, 95 Fed.Appx. 957, 960–61 (10th Cir. 2004)(where defendants were seized at the time they abandoned a gun even though they kept driving away from the officers for some distance). Thus, determining whether or not a suspect has submitted to authority requires a clear understanding of the circumstances and a descriptive record indicating the officer's actions and the suspect's response to the show of force.

Our holding in *Outlaw v. People* is instructive. In *Outlaw*, officers drove their patrol car onto a sidewalk, followed for a few feet, pulled off the sidewalk and followed behind, still in their car, for about fifteen feet. *Outlaw*, 17 P.3d at 153–54. The police then summoned Outlaw to them. *Id.* We found that "a reasonable person in Outlaw's position would ... view the police conduct as a command to stop." *Id.* at 156. The police, through their use of the car, made a show of force and altered the direction of travel. *Id.* This action seized the suspect. *Id.* Because the officers did not have any reasonable basis to stop Outlaw, the trial court was reversed and the evidence suppressed. *Id.* at 159.

This determination was possible in *Outlaw* because, in that case, the record was sufficiently clear about the actions of the officers and the accused. Here, we have an extremely short time frame, mere seconds between the officers' show of force and the arrest of McClain. To draw a line that clearly demarcates when McClain is seized is difficult under any circumstances. Here, given the paucity of facts, any line could be drawn, but none could be supported. The facts we do know support a finding that McClain submitted to the officers either just before or just after he dropped the bag; the difference is a second at most.

To summarize, the officers pulled into a parking lot and "cut-off" McClain and his companion, pulled in "nose-to-nose" with another parked vehicle, and forced McClain to "pass by in order to keep going." McClain somehow ended up behind another parked car (though it is not clear if it is the one with which the officers parked nose-to-nose).

McClain was no longer on the sidewalk—instead he was in the parking lot.[4] The trial court found that after the officers pulled into the lot "the two vehicles were behind a parked car." From this confusing record, we cannot determine the position of the officers, the vehicle, or McClain.

If the officers were parked in such a way as to block McClain's direction of travel, under *Outlaw*, McClain was seized before he dropped the bag. McClain's actions could support a finding that McClain submitted because, unlike his companion, he did not run. If McClain stopped walking before he dropped the bag he would have submitted to their authority and was seized. On the other hand, if the officers did not block the sidewalk and McClain did not stop walking but merely dropped the bag on the way to an inevitable conversation with the officers, he may have consented. However, if he walked toward the officers because he did not feel free to ignore them, he submitted and was seized. While we do not know what actually happened from this record, it is clear that the officers, McClain, and the trial judge did.

Interestingly, both the officers and McClain subjectively understood that McClain was seized (in contrast to his companion who ran). It is curious that, while the trial court also appears to have found that the men were seized, the majority reaches a different conclusion, though relying on the trial court's findings.

### IV. The Trial Court's Findings

The factual question we are faced with is whether the record supports the trial court's finding that McClain was seized prior to dropping the bag. If he was, the evidence should be suppressed, if not, the majority may be correct. However, the trial court's ruling should be given great deference and should stand undisturbed unless unsupported by the record. *People v. Quezada*, 731 P.2d 730, 732–33 (Colo.1987)(citing *Maine v. Taylor*, 477 U.S. 131, 145, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)). In a case such as this, however, it is clear that for appropriate appellate review, more information is required. *See People v. Vazquez*, 106 P.3d 1039, 1039

(Colo.2005)(reviewing a case for a second time after an initial remand for special findings of fact).

The trial court's ruling from the bench begins with an understanding that the situation was an evolving investigatory stop. The trial court noted:

> There are different levels of contact the police can have, and in this case [one officer] said when they first pulled up and *before anything else had happened* he was at that time anticipating making what's known as an investigatory stop, which would require an articulable and specific basis in fact for suspecting that criminal activity has taken place ... the court considers the totality of the circumstances. What happened in this case—and the question is whether or not *the character* of that *initial stop changed* at any point in time so that there was more than simply a suspicion. . . .

(Emphasis added). Thus, the trial court described an evolving investigatory stop, but a stop nonetheless.

After a discussion of the legal standards of probable cause and reasonable suspicion, and how they are different, the court continued:

> [The officer said] [']I placed him in handcuffs. I was pretty sure it's something they weren't supposed to have[']. And he is arrested, I find at that point. He is seized, he is no longer free to go. This has been *converted from an investigatory stop* because it's gone well beyond simply trying to find out what's going on. . . .

(Emphasis added). The court then ruled that the officers, while having reasonable suspicion to stop, did not have the higher justification of probable cause to arrest, and suppressed the statements and evidence seized.

The attorneys were unsure about the trial court's ruling and questioned the judge further. The court clarified and appears to have found that the defendant was justifiably stopped before the bag was dropped, but

4. Additionally, an officer drew on the diagram some sort of divider between parking lots with concrete edging and shrubs. It is unclear how this divider affected McClain's direction of travel relative to where the police parked.

lacked probable cause to put him in handcuffs:

> Q [by the prosecutor to the court]: As far as time frame goes, is the court finding that there was any restriction on the defendant's movement at the time that he actually threw the bag?
>
> THE COURT: No, I'm not finding—I'm not going along with that line of cases. I find at that point probably they had a reason to do an *investigatory stop*.
>
> Q [defense attorney]: Even without throwing—
>
> THE COURT: But *before the baggy, that's* all there was. Once the baggy was thrown down looks like *the investigatory stop* went right out the window, and he called him over to place him into handcuffs.

(Emphasis added).

From this exchange I conclude that the better interpretation of the trial court's findings is that McClain was seized before the bag was dropped and the officers were justified in seizing McClain, but not justified in arresting him.[5] This interpretation is consistent with the trial court's attempt to describe an evolving stop that culminated in an illegal arrest.

To the extent that the majority correctly recognizes that evidence abandoned prior to a seizure is not the fruit of that seizure, the majority correctly holds that the trial court's ruling was wrong. Further, to the extent that the trial court found that the officers had a reasonable suspicion to effect a stop prior to arrest, I conclude that the trial court was wrong on that point as well.

An officer may not lawfully stop a person merely because that person is in a high crime area, without more facts pointing to possible criminality. *Outlaw*, 17 P.3d at 157 (citing *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir.1996)). An officer may not stop a person because of the color of their skin for the same reason. Finally, mere "furtive gestures" are also not sufficient to constitute the basis for an investigatory stop. *Id.* (citing *People v. Thomas*, 660 P.2d 1272, 1275 (Colo.1983)(finding that a "furtive gesture" is too ambiguous to constitute the basis for an investigatory stop), *overruled on other grounds by People v. Archuleta*, 980 P.2d 509, 514 (Colo.1999)).

Here, the record unambiguously demonstrates that these officers did not have any facts to justify their stop of McClain other than his being in a high crime area and "these particular people" were "basically ... up to no good." These facts do not provide reasonable grounds to stop McClain. If the trial court found that the men had been properly seized before the bag was dropped, though incorrect, the trial court nonetheless reached the proper conclusion—that the bag should be suppressed as the fruit of an illegal seizure.

## IV. Conclusion

In my view neither the record nor the trial court's findings are sufficient to permit adequate appellate review. Accordingly, I would return this case to the trial court for further findings and permit the trial court to entertain additional evidence. *See People v. Wood*, 135 P.3d 744 (Colo.2006)(ruling on an interlocutory appeal after remanding the case on two previous occasions for findings of fact); *Vazquez*, 106 P.3d 1039(reaching the merits only after a prior order directing the trial court to make specific findings of fact and to indicate the historical facts upon which it relied in reaching its conclusion); *People v. Ingram*, 984 P.2d 597, 604 (Colo.1999)(holding that in the absence of sufficient findings of fact and conclusions of law by the trial court, this Court must remand with directions to the trial court to create an adequate record upon which to

---

**5.** To be fair, this is not the only interpretation of the trial court's order. Though "investigatory stop" is likely the antecedent referent to the relative pronoun "that's" in the court's phrase "before the baggy, *that's*", the trial court's other responses reveal a potentially different view. The prosecutor questioned the seizure at the time the bag is dropped; the court responded "[n]o, I'm not finding.... I'm not going along with those cases....." The meaning of this exchange is thus ambiguous because it is not clear whether or not the court thought an investigatory stop occurred before the bag was dropped or just whether he thought the police had reason to stop before they pulled up. Of course, if there is no stop, there is no legal requirement for a reason to stop. Therefore, I conclude that the trial court likely found a stop had occurred before the bag was dropped.

base its holding)(citing *People v. Sutherland,* 886 P.2d 681, 688 (Colo.1994)). Alternatively, I would at least order the diagram sent to us, that we might view whether seemingly contradictory evidence can be reconciled by an illustration of key facts undiscernable from the written record.

I am authorized to state that Justice BENDER joins in this dissent.