**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 24 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

MURNIA RESCHELL VERCHER, JR.,
and RANDALL DERWIN TERRELL,

      Defendants - Appellees.

No. 03-3110

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 02-CR-40154-JAR)**

---

T.G. Luedke, Assistant United States Attorney, (Eric F. Melgren, United States Attorney, and Nancy Landis Caplinger with him on the brief) Topeka, Kansas, for the Plaintiff-Appellant.

Michael M. Jackson, Topeka, Kansas for Defendant-Appellee Randall Derwin Terrell.

David J. Phillips, Federal Public Defender and Melody Evans, Assistant Federal Public Defender, Topeka, Kansas, filed a brief for Defendant-Appellee Murnia Reschell Vercher, Jr.

---

Before **LUCERO**, **PORFILIO**, and **TYMKOVICH** Circuit Judges.

---

**LUCERO**, Circuit Judge.

Before us in the present appeal by the government is a challenge to the district court's decision to grant Randall Terrell and Murnia Vercher's motion to suppress evidence seized incident to a traffic stop. Determination of the matter rests on our evaluation of a single issue: Are the facts before us sufficient to support a Kansas highway trooper's claim of reasonable suspicion that defendants violated a state traffic law? On our review of the record and authorities, we conclude that the government's challenge is valid. We exercise jurisdiction pursuant to 18 U.S.C. § 3731, and reverse.

**I**

On November 5, 2002, at approximately 7:55 a.m., Kansas Highway Patrol Trooper Mario Rios was patrolling eastbound in the left lane on Interstate 70 in Kansas when he observed Terrell driving a minivan eastbound in the right lane with passenger Vercher. The day was overcast and not windy, the temperature was about thirty-two degrees, and the road was mostly dry with some wet spots. Rios testified that when he first noticed Terrell's minivan, it was about two car lengths (twenty to twenty-five feet) behind the preceding vehicle and driving approximately seventy miles per hour uphill on a quarter mile incline. Rios testified that based upon his training and experience, this was not a safe distance to follow behind another car. According to Rios, a safe following distance would have been between 100 and 150 feet. After observing the minivan, Rios determined that he "wanted to get the vehicle stopped to make sure there wasn't going to

2

be an accident because of the [overcast] weather conditions." (R. at 68.) Rios pulled behind it from the left lane, activated his warning lights, and effected a traffic stop.

Terrell testified that he had been traveling in tandem with three other vehicles for some time; specifically, that he was following a Kia and was followed by a tractor trailer, which was followed by another van. Terrell stated that as the vehicles came over the crest of a hill, he noticed the Kia's brake lights come on and he tapped his brakes in response. As Rio's patrol car approached Terrell from behind in the left-hand lane, Terrell continued, the Kia decelerated, and as a result, the tractor trailer drew much closer to Terrell than he had to the Kia. In light of these circumstances, Terrell contended that he was maintaining a safe following distance. As the vehicles climbed the hill, the tractor trailer slowed, and Rios pulled in between the minivan and the tractor trailer to effectuate a traffic stop.

Upon checking Terrell's driver license and the rental papers for the minivan, Rios determined that neither Terrell nor Vercher was authorized to drive the minivan. After conferring with the rental company, Rios issued a warning for the stop and had the minivan towed and impounded. In inventorying the minivan, officers, including Rios, discovered that the seals of two interior door panels recently had been manipulated. Rios easily pulled off the panel seals and discovered approximately five pounds of cocaine. Both Terrell and Vercher denied knowledge of the packages.

3

On December 30, 2002, a two-count indictment was filed in district court. Count one charged Vercher and Terrell with possession with intent to distribute in excess of 500 grams of cocaine, and count two charged the men with conspiracy. On January 28, 2003, Terrell filed a motion to suppress the evidence seized from the minivan based on his contention that the traffic stop was not justified at its inception. Vercher filed a motion to join Terrell's motion to suppress.

On conclusion of a suppression hearing, the district court issued a memorandum and order granting defendants' motion to suppress and finding that the government failed to prove that Rios had a reasonable articulable suspicion for the traffic stop. The district court reasoned that Kansas law does not prohibit following-too-closely per se, but rather requires an officer to consider whether a vehicle is following more closely than is reasonable and prudent given the speed of the vehicles, the traffic, and the road conditions. K.S.A. § 8-1523(a) states:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

To this point, the district court found:

> Rios did not testify to, and thus apparently did not consider the traffic conditions. Rios did not recall the tractor trailer behind Terrell, although the videotape [recording the traffic stop] corroborates that the tractor trailer was behind Terrell. Rios did not notice whether or not the Kia was braking. Rios did not notice whether the cars and truck bunched up at the bottom of the hill. His observation was a snapshot taken as the vehicles were beginning to go uphill but while Terell was still relatively close behind the Kia. Because Rios did not notice or consider the traffic conditions, he

4

could not make an evaluation of whether Terrell's distance, although close given the speed of the vehicles, was nevertheless reasonable and prudent given the relevant circumstances.

(R. at 36.) Finding Rios's observation insufficient to support a reasonable suspicion that Terrell was driving more closely than was reasonable and prudent, the district court granted Terrell's motion to suppress the evidence. In our review, we stress that it is not our role to decide whether the present facts are adequate to affirm a conviction under the applicable Kansas traffic statute; we inquire solely as to whether the facts are adequate to form an objectively reasonable suspicion that Terrell was violating K.S.A. § 8-1523(a). We have reviewed the videotape taken by the officer incident to the stop admitted into evidence as well as the balance of the record, and because we conclude that Rios's observation of the speed and distance was sufficient to form such a suspicion, we **REVERSE**. Were this a case involving commuter traffic on congested roads, rather than the sparsely populated traffic conditions revealed by our review of the videotape, our decision might be otherwise. However, on these facts and this speed—seventy to seventy-five miles per hour—we believe that district court's conclusion that Rios's observations did not amount to reasonable suspicion was in error.

## II

When reviewing a district court's order granting a motion to suppress, we accept the "trial court's factual findings unless clearly erroneous, and vie[w] the evidence in the light most favorable to the district court's finding." U.S. v. Leyva-Serrano, 127 F.3d

5

1280, 1282 (10th Cir. 1997) (citation omitted). At a hearing on a pre-trial motion to suppress, "the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." Id. (quotation omitted). Though we defer to the district court's findings of fact, "we review de novo the ultimate determination of the reasonableness [of the stop] under the Fourth Amendment." Id. (citation omitted). Specifically, we examine the events that occurred leading up to the stop to determine whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or probable cause." Ornelas v. U.S., 517 U.S. 690, 696 (1996).

Whether a traffic stop is valid under the Fourth Amendment turns on whether "this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." U.S. v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (citation omitted). This standard expressly leaves to "the state legislatures the task of determining what the traffic laws ought to be, and how those laws ought to be enforced." Id. at 788. Thus the narrow question before us is whether, given the district court's finding that Rios did not observe whether the vehicles surrounding Terrell's minivan were decelerating, Rios's observations of the speed and distance alone may support an objectively reasonable suspicion that Terrell was following the Kia more closely than was reasonable and prudent under K.S.A. § 8-1523(a).

6

Reasonable suspicion requires that an officer provide "some minimal level of objective justification." I.N.S. v. Delgado, 466 U.S. 210, 217 (1984). However, an officer with reasonable suspicion need not "rule out the possibility of innocent conduct" as long as the totality of the circumstances suffices to form "a particularized and objective basis" for a traffic stop. United States v. Arvizu, 534 U.S. 266, 277–78 (2002) (citation omitted). Moreover, reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error. See United States v. Walraven, 892 F.2d 972, 974–75 (10th Cir. 1989) (quotation omitted). Finally, reasonable suspicion may rely on information less reliable than that required to show probable cause, Alabama v. White, 496 U.S. 325, 330 (1990), and it need not be correct. See United States v. Callerman, 273 F.3d 1284, 1287 (10th Cir. 2001) (upholding a traffic stop based on a reasonable articulable suspicion that a cracked windshield substantially obstructed the driver's view—the standard required by statute—regardless of whether or not the crack actually constituted a violation of the law); United States v. Allegree, 175 F.3d 648, 650 (8th Cir. 1999) (upholding a traffic stop based on the mistaken, yet reasonable, belief that defendant had illegal headlights).

According to the government, an observation of a following distance approximately one-fourth to one-fifth of what was testified as generally considered safe is, in this case, sufficient to effectuate a traffic stop under K.S.A. § 8-1523(a). We agree. Of the factors listed by the statute—speed, following distance, road conditions, and traffic

7

conditions—the only factor found by the district court not to have been taken into account by Rios was the particular traffic conditions surrounding the stop. However, as the videotape reveals, general traffic conditions—i.e., relatively few vehicles driving on the road—were patently apparent. K.S.A. § 8-1523(a) establishes that the danger of following too closely is manifested by the distance between vehicles, with due regard for the speed, road, and traffic conditions. On a rural interstate in Kansas, an officer's observation of the high speed and dangerously close traveling distance provides sufficient objective justification to suspect that the distance between the vehicles is not "reasonable and prudent." Although Terrell's added explanation of the particular traffic conditions may establish that a traffic violation had not in fact occurred under Kansas state law, that does not trump the relevant standard before us; Rios's observations need only articulate a basis for a suspicion that a traffic violation might have been occurring.

We have previously addressed the legitimacy of traffic stops for violations of context-dependent "single lane" statutes that establish a violation only when a driver fails to remain in a single lane to the extent practicable. In so doing, we have engaged in a context-specific inquiry to evaluate whether the historical facts, "viewed from the standpoint of an objectively reasonable police officer," Ornelas, 517 U.S. at 696, establish a minimal basis for reasonable suspicion. Unlike United States v. Gregory, in which we held that one incident of straying onto the shoulder of a road did not establish reasonable suspicion of criminal activity when the road was winding, the terrain mountainous, and

8

the weather windy, 79 F.3d 973, 978 (10th Cir. 1996), in this case factors casting doubt on Rios's reasonable suspicion are less availing. Nothing is advanced in the record that demonstrates that Terrell was prevented from applying his brakes to maintain a safe interval, or that he was in imminent danger of being rear-ended such that it prevented him from maintaining a safe following distance. Moreover, although we observed in Gregory that the automobile in that case swerved onto the shoulder and therefore was not in danger of a collision, see 79 F.3d at 978, Terrell's high speed and proximity to the preceding vehicle presented a potential danger, which, according to the officer, warranted the stop. Requiring an officer to deliberate for a longer period of time before effectuating a traffic stop circumvents our reasonable suspicion analysis, which is purposely designed to "avoid unrealistic second-guessing of police officers' decisions, and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995) (quotations omitted); cf. United States v. Ozbirn,189 F.3d 1194, 1198 (1999) (upholding a traffic stop when a vehicle twice drifted onto the shoulder in optimal weather, road, and traffic conditions because it was not impracticable to stay in one lane); United States. v. Botero-Ospina, 71 F.3d 783, 785, 788 (10th Cir. 1995) (upholding a stop when the officer observed a car "swerve from the outside lane, straddle the center line, and swerve back to the outside lane" on a stretch of highway where drivers frequently experience fatigue).

9

In the instant case, therefore, we agree with the government that Rios's observation of the high speed and close distance in this case provide a sufficient basis to suspect that Terrell was following more closely than was reasonable and prudent under the circumstances. Thus we conclude that in some cases, an officer's observation of a vehicle traveling at a high speed and close distance from the preceding vehicle, while not necessarily sufficient to convict, is sufficient to provide a reasonable suspicion to effectuate a traffic stop. See Illinois v. Wardlow, 528 U.S. 119, 126 (2000) (concluding that reasonable suspicion analysis "accepts the risk that officers may stop innocent people"). That the facts may not support a conclusion that Terrell actually violated the law is irrelevant; reasonable suspicion requires "a showing considerably less than preponderance of the evidence," id. at 123, and may be justified on a quantum of evidence far less than that required to establish probable cause—a fortiori, far less than to establish guilt. Because we conclude that Rios had the requisite minimal level of objective justification to suspect that K.S.A. § 8-1523(a) had been violated, we **REVERSE** the district court's grant of Vercher and Terrell's motion to suppress and **REMAND** for proceedings consistent with this opinion.