FILED
United States Court of Appeals
Tenth Circuit

November 27, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THOMAS M. EGAN,

Defendant - Appellant.

No. 06-3426

D. Kan.

(D.C. No. 06-CR-40028-01-SAC)

---

**ORDER AND JUDGMENT***

---

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Thomas M. Egan entered a conditional plea of guilty to conspiracy to

distribute and possess with intent to distribute approximately 214 kilograms of

---

*This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

marijuana in violation of 21 U.S.C. § 841(a)(1). He asserts the district court improperly denied his motion to suppress evidence seized during a traffic stop, claiming the officer lacked sufficient grounds for the stop. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

On January 15, 2006, Officer Terry Trammel, a Sheriff's Deputy for Shawnee County, Kansas, was patrolling a stretch of Interstate 70. He observed a small "box-type" rental moving truck veer toward the right side of the right-hand traffic lane, causing the back right tire of the truck to cross the "fog line" of the highway onto the shoulder and then return to the right-hand lane. He followed the truck for approximately one mile and saw it veer two to three times, at one point allowing both right back dual tires to cross the line and enter the shoulder. Concerned the driver may be intoxicated, sleepy, in medical need or experiencing mechanical problems, Trammel activated his emergency lights and stopped the truck.

He approached the driver, Tamera Cardenas, and asked for her driver's license and rental papers, which she provided. Also in the truck was Cardenas's daughter and Egan. After Cardenas complied with Trammel's request to step outside the truck, he told her he had stopped her for failing to maintain a single

-2-

lane as required by Kan. Stat. Ann. § 8-1522.[1]  Cardenas admitted she was aware

she was crossing the line but stated she felt the "wind sometimes would catch her,

and when semi[-trucks] would pass her she was having trouble keeping the

vehicle straight."  (R. Vol. III at 21.)

Trammel asked Cardenas some questions regarding her travel plans and

then proceeded to the passenger side.  He asked for Egan's identification and

inquired into his travel plans.  Cardenas and Egan told very different stories.

Trammel then checked their identifications and found no outstanding warrants.

After apprising dispatch of the situation, Trammel returned Cardenas's papers,

gave her a warning and told her she was free to leave.  As she was returning to

the driver's side, Trammel asked if he could ask a few more questions.  Cardenas

agreed.  Eventually, both Cardenas and Egan granted Trammel permission to look

inside the truck.  Another officer had arrived and the two searched the back of the

truck, finding what felt like bricks in the cushions of a couch.  A narcotics dog

was called and it alerted to the presence of drugs when it entered the rear of the

---

[1]  The statute reads in relevant part:

Whenever any roadway has been divided into two (2) or more clearly
marked lanes for traffic, the following rules in addition to all others
consistent herewith shall apply.

(a) A vehicle shall be driven as nearly as practicable entirely within a
single lane and shall not be moved from such lane until the driver has
first ascertained that such movement can be made with safety.

Kan. Stat. Ann. § 8-1522.

truck. The truck was impounded and later was found to contain twenty bundles of marijuana hidden in the couches.

After his indictment Egan filed a motion to suppress the evidence found in the search of the truck, claiming Trammel did not have reasonable suspicion to stop the truck. Following two hearings, the court denied the motion in a written order on August 25, 2006. Its factual findings included: (1) there was some gusting wind at the time the truck was stopped which might impact the operation of the truck because of its profile and size; (2) the rental truck drifted over the fog line two or three times in the span of a mile or less, eventually with both right rear dual tires crossing the fog line, (3) the video of the stop does not show winds which would have caused the "major swerve" over the fog line observed by Trammel, and (4) the road conditions and terrain would not affect the truck's operation. (R. Vol. I, Doc. 43 at 10-11.) Based on these findings, the court concluded Trammel had reasonable suspicion to stop the truck on two independent legal grounds. First, Trammel had reasonable suspicion Cardenas was in violation of Kan. Stat. Ann. § 8-1522. Second, he had reasonable suspicion to conduct a safety stop "for possible intoxication or fatigue, as allowed under Kansas law." (*Id*. at 11, n.2.) Egan filed this timely appeal from the court's order.

## II. Discussion

### A.      Standard of Review

The Fourth Amendment's prohibition of "unreasonable searches and seizures" by the Government extends to brief investigatory stops of persons or vehicles. *Terry v. Ohio,* 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981).  "[T]he Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation omitted). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. at 274 (citations omitted).

We review a denial of a motion to suppress by considering "the totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id*. at 273 (citation and quotation omitted).  "[W]e accept the trial court's factual findings unless clearly erroneous, and vie[w] the evidence in the light most favorable to the district court's finding." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (quotation omitted).  Although "the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge[,] . . . we review de novo the ultimate determination

of the reasonableness of the stop under the Fourth Amendment." *Id.* (quotation and citation omitted).

B.  Reasonable Suspicion under Kan. Stat. Ann. § 8-1522

Egan argues that because the Kansas statute only requires a driver to maintain a single lane "as nearly as practicable," Cardenas's failure to maintain a single lane given the wind conditions and the configuration of her vehicle was not a violation of law. "[W]e stress that it is not our role to decide whether the present facts are adequate to affirm a conviction under the applicable Kansas traffic statute; we inquire solely as to whether the facts are adequate to form an objectively reasonable suspicion that [Cardenas] was violating [Kan. Stat. Ann. § 8-1522]." *Vercher*, 358 F.3d at 1260.

Egan primarily complains the district court's finding that Trammel witnessed a "major swerve" is unsupported by the evidence because Trammel testified the truck encroached the fog line only "a foot, maybe more." (R. Vol. I, Doc. 43; Vol. III at 37.) He maintains the evidence demonstrated the minimal movement of the truck in light of the windy weather conditions would allow but one reasonable conclusion – Cardenas was maintaining a single lane "as nearly as reasonably practicable" and Trammel had no legitimate reasonable suspicion for the stop.

Egan claims the facts of this case are most similar to those we considered in *United States v. Gregory*, a case interpreting a Utah statute very similar to the

Kansas statute here. 79 F.3d 973 (10th Cir. 2006). In *Gregory*, we found an isolated incident of a vehicle crossing into an emergency lane was not a violation of Utah's law which requires the operator to keep the vehicle "as nearly as practicable entirely within a single lane." *Id.* at 978 (reviewing Utah Code Ann. § 41-6-61(1), renumbered as § 41-6a-710 (eff. Feb. 2, 2005)). Gregory was faced with a winding mountainous road in windy conditions. We determined that "[u]nder these conditions any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity." *Id.* And, "because the driver did not violate the Utah statute, no basis existed for the officer to form the reasonable suspicion necessary for the traffic stop in question." *United States v. Cervine*, 347 F.3d 865, 870 (10th Cir. 2003) (interpreting *Gregory*). Since *Gregory* was decided, we have stated it does not create a "bright-line rule" of what conduct constitutes a violation of this type of statute, but rather "highlight[s] the need to analyze objectively all the surrounding facts and circumstances" to determine whether the officer had a reasonable suspicion to make the stop. *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999).

Here, however, we are not looking at an isolated incident of crossing the fog line, but at least two to three occasions within a mile where Cardenas did not maintain a single lane. Moreover, the district court's characterization of the fog line crossing as a "major swerve" is largely semantic; taken in context it is

-7-

supported by the evidence. Trammel testified: "One time was at an extent that both sets of duals were across the line . . . . I don't remember if it was the first time, second time or third time that I observed it which one went way over. If I had to say, it would be the third, because that would be enough for me to stop it." (R. Vol. III at 14-15.) Trammel later stated: "Once that set of duals went clear over, to me that's a big area and two sets of tires coming over the line I believe that that was severe enough to make a stop." (*Id.* at 65.)

Egan also claims the district court's finding that the wind factor could affect the path of the truck constitutes an adverse weather condition which Trammel should have, and failed, to consider. The district court properly addressed this argument by its factual finding that the movement of the truck was more of a deviation than would be expected under the weather conditions.[2]

---

[2] The court reasoned although:

> the gusting winds . . . might have made it more difficult for Ms. Cardenas to keep the truck from drifting occasionally onto the fog line. . . . [t]he rental truck here drifted over the fog line two or three times in a span of a mile or less, and on the last time, the truck swerved onto the shoulder with both tires on the [right] rear dual set going across the fog line. . . . Deputy Trammel testified that he had not seen any other vehicles having the same difficulty in maintaining a single lane as this rental truck was having. Deputy Trammel opined that the wind was not [the] cause of the erratic driving he witnessed. None of the evidence, in particular the video recording, shows the wind of such a speed that it would have caused the major swerve onto the shoulder . . . . Nothing about the road conditions or the terrain should have affected the truck's operation. . . . The reasonable suspicion analysis is not a license to conduct unrealistic second-guessing of police officers, to ignore the appropriate

-8-

An officer's observation of a vehicle straying out of its lane multiple times over a short distance creates reasonable suspicion that the driver violated Kan. Stat. Ann. § 8-1522(a) so long as the strays could not be explained by adverse physical conditions such as the state of the road, the weather, or the conduct of law enforcement. *See United States v. Cline*, 349 F.3d 1276, 1287 (10th Cir. 2003); *United States v. Zabalza,* 346 F.3d 1255, 1258-59 (10th Cir. 2003); *Ozbirn,* 189 F.3d at 1198. In addition, the Kansas Court of Appeals recently noted, "in articulating reasonable suspicion that a [violation of Kan. Stat. Ann. § 8-1522(a)] has occurred in order to justify the traffic stop, the totality of the circumstances must make it appear to the officer that not only did the defendant's vehicle move from its lane of travel, *but it left its lane when it was not safe to do so." State v. Ross,* 149 P.3d 876, 879 (Kan. Ct. App. 2007) (emphasis added). Our case law reveals "the notion that when a vehicle repeatedly crosses out of its lane without apparent justification, an officer may reasonably suspect that the driver did not purposely move out of the lane and, thereby, failed to first ascertain that one or more of those departures could be 'made with safety,' in violation of [Kan. Stat. Ann.] § 8-1522(a)." *United States v. Brown*, No. 05-3400, 2007 WL

> deference due trained officers, or to require Deputy Trammel [to] have followed the rental truck longer, deliberated more fully about the effect of wind on this particular truck, and estimate[] the degree to which the gusting wind may have caused the particular driving maneuvers.

(R. Vol. I, Doc. 43 at 10-11.)

1241646 *6 (10th Cir. 2007) (unpublished).[3]

Here, the record supports the court's finding that Cardenas's driving was not plainly due to the road, the weather, or Trammel's conduct. Thus, sufficient evidence existed for Trammel's reasonable suspicion that Cardenas "failed to first ascertain that at least one of the [two to] three movements across the fog line could be made with safety." *Id.* Reasonable suspicion requires an officer provide "some minimal level of objective justification." *I.N.S. v. Delgado,* 466 U.S. 210, 217 (1984). It does not require the officer to "rule out the possibility of innocent conduct" as long as the totality of the circumstances suffices to form "a particularized and objective basis" for a traffic stop. *Arvizu,* 534 U.S. at 277. In addition, reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error. *See United States v. Walraven,* 892 F.2d 972, 974-75 (10th Cir.1989). We see no error in the district court's interpretation of the evidence and its conclusions resulting therefrom.

C.      Reasonable Suspicion to Conduct a Safety Stop

As an affirmative rationale, the district court also found the stop was reasonable under the officer's role as a community caretaker. In *Ozbirn*, we recognized a reasonable articulable suspicion that a driver may be impaired or sleepy and could present a risk of harm to himself and others "warrant[s] an

---

[3] Unpublished Orders and Judgments are not precedent. We mention *Brown* as we would an opinion from another circuit, not binding but persuasive because of its reasoned analysis. *See* 10th Cir. R. App. 32.1(A).

investigative stop under the principles articulated in *Terry v. Ohio*. 189 F.3d at 1199 ("motor home drifted onto the shoulder twice within a quarter mile without any adverse circumstances . . . to excuse or explain the deviation."). We need not address the alternative holding since we affirm on the district court's primary analysis.

**AFFIRMED**.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge