FILED
United States Court of Appeals
Tenth Circuit

November 12, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MIGUEL RUBALCAVA-ROACHO,

Defendant-Appellant.

No. 07-3362
(D.C. No. 6:06-CR-10258-WEB-3)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

Miguel Rubalcava-Roacho appeals from the district court's order denying his motion to suppress and from the jury's verdict finding him guilty of possession with intent to distribute cocaine and methamphetamine and interstate travel to facilitate a drug trafficking crime. We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

On October 1, 2006, Wayne Cline, a Pratt, Kansas police officer, was on duty in a marked patrol car on U.S. Highway 54. He was on the west edge of town when a large recreational vehicle ("RV") traveling eastbound caught his attention. He noticed a young Hispanic female driving the RV and a young Hispanic male seated in the front passenger seat next to her. He thought it unusual to see such young individuals driving an RV. He also noticed the RV had an out-of-state license plate and it was not towing another vehicle. In his experience it was common for RV's like this one to tow another vehicle. His report noted the occupants were Hispanic, but he denied this was a factor in his decision to follow the car.

Cline turned his car around and proceeded to follow the RV. It pulled into a "Kwik Shop" (gas station/convenience store) where three people got out– the two passengers he had seen earlier and an older woman. The three passengers stood outside of the vehicle for about ten minutes. They did not go into the store, pump gas or use the trash cans. When they re-entered the RV, the older woman took the driver's seat. Cline continued to follow the vehicle.

On the east side of town, at the junction of U.S. 54 and Kansas Highway 61, the four-lane road ends and Highway 54 becomes a two-lane road. As one approaches this intersection, the right-hand lane is marked as a "right-turn only" lane. The left-hand lane continues on through the intersection as Highway 54.

The Pratt city limit, where Cline's jurisdiction ends, is approximately 200 yards beyond the intersection. Cline testified the RV was in the right-hand, right-turn only lane, approaching the intersection when he saw it signal a left turn. The RV turned right, however, into the parking lot of what used to be a Wal-Mart store. Cline turned on his emergency lights at that point and stopped the RV in the parking lot. He considered making a right-hand turn while signaling a turn in the opposite direction to be a violation of a Pratt city traffic ordinance.

Beatris Vasquez was the older woman driving the RV when Cline initiated the traffic stop. According to her testimony all three of the defendants went inside the Kwik Shop store to use the restroom and purchase something to eat. She noticed the police car across the street while they were stopped and also saw the police car in the rear-view mirror as it followed her through town. When she reached the other end of town, she ended up in the right-hand only lane. She wanted to go straight through the intersection so she turned on her left turn signal while stopped at a traffic light. She turned right into a parking lot only because she saw the police car's emergency lights turn on behind her. When the officer approached the car, he asked, "Which is it, right or left?"

The rest of the encounter is largely undisputed and not directly relevant to the motion to suppress.[1] After the stop, Vasquez and her daughter, Noelia

---

[1] The district court concluded Rubalcava-Roacho did not have standing to
(continued...)

Garza-Sotelo, the other female occupant of the car, were arrested for driving without a valid license and the RV was taken to the Pratt Law Enforcement Center. It was ultimately searched pursuant to a warrant and officers discovered a nylon bag in a hidden compartment underneath the floor of the RV. The nylon bag contained large quantities of cocaine and methamphetamine.

Rubalcava-Roacho, Vasquez, and Garza-Sotelo were charged in a three count superseding indictment with possession with intent to distribute more than five kilograms of cocaine and more than fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. They were also charged with transporting these controlled substances across state lines from Texas to Kansas with the intention of delivering them in violation of 18 U.S.C. § 1952(a)(3).

Rubalcava-Roacho, Vasquez and Garza-Sotelo filed a joint motion to suppress the evidence relating to the drugs retrieved from the RV. Prior to the hearing on the motion, Vasquez and Garza-Sotelo withdrew from their participation in the motion because they intended to enter guilty pleas. After a hearing the court denied the motion.

---

[1](...continued)
directly challenge the search of the RV, but could challenge the constitutionality of the traffic stop.

The case against Rubalcava-Roacho proceeded to a jury trial. Both Vasquez and Garza-Sotelo testified against Rubalcava-Roacho. Garza-Sotelo said she met a man in Amarillo, Texas named Reynaldo Marquez. She later learned he owned an RV and asked if she could rent it for a trip to Florida. Marquez said she could borrow it if she would do him a favor in exchange. He asked her to drive an illegal alien from El Paso, Texas to Amarillo, Texas. She agreed to the favor and she and Vasquez drove from Amarillo to El Paso together. When she arrived in El Paso, Marquez was with Rubalcava-Roacho.

Garza-Sotelo and Vasquez drove Rubalcava-Roacho back to Amarillo. When they arrived, Marquez told Garza-Sotelo he would pay her $500 if she would drive Rubalcava-Roacho to Wichita, Kansas. Marquez told her: Rubalcava-Roacho knew the way to Wichita; seventy pounds of marijuana were hidden in the RV; and Rubalcava-Roacho knew the hiding place. Marquez told her she did not need to know where the marijuana was hidden. Rubalcava-Roacho was standing there during this conversation; he did not deny knowing where the illegal drugs were hidden; and he did not protest or deny his part in the plan to take the drugs to Kansas for distribution. Once they got to Kansas, the plan was for Rubalcava-Roacho to stay with the RV and for Garza-Sotelo and Vasquez to take the bus back to Amarillo.

During the trip to Kansas, Rubalcava-Roacho told Garza-Sotelo he was doing this because he needed the money and he had worked for Marquez a few

times before. Rubalcava-Roacho received several calls from Efrain, Marquez's associate, while they were driving to Kansas. He sat in the passenger seat and showed the women the way. At one point, Garza-Sotelo asked him where they were going in Wichita. He replied he would tell her when they got there.

Vasquez testified she went to El Paso with her daughter to pick up Rubalcava-Roacho and drive him to Amarillo. Later, her daughter told her about the plan to drive him and seventy pounds of marijuana from Amarillo to Wichita. When Cline stopped them, Rubalcava-Roacho told her what to say to the officer; what she told the officer was not true.

Rubalcava-Roacho did not testify. The jury found him guilty on all counts. He appeals.

## II. Discussion

A. *Motion to Suppress*

Rubalcava-Roacho argues the district court erred in denying his motion to suppress the evidence taken from the RV. Before the district court, he asserted the initial traffic stop was invalid because the officer did not have probable cause to believe a traffic violation had occurred when he stopped the RV.

In reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. *United States v. Patterson*, 472 F.3d 767, 775 (10th Cir. 2006), *petition for cert. filed* (U.S.

-6-

Apr. 24, 2007) (No. 06-10972). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004).

At the hearing on the motion to suppress, Vasquez testified she turned right into the parking lot only after she saw the officer's emergency lights flashing. Cline testified he observed a traffic violation when the RV signaled a left turn and then turned right into a parking lot; he did not try to make the RV commit a traffic violation; and he did not activate his emergency lights until the RV completed the right turn into the parking lot.

In the order denying the motion to suppress, the district court noted this was a "difficult" issue because it found the testimony of both Cline and Vasquez to be generally credible, but it ultimately concluded "[a]fter weighing the credibility of the witnesses, and based upon a preponderance of the evidence, . . . that the officer more likely than not observed a traffic violation before stopping the RV." R. Vol. 1, Doc. 48 at 7. Because the district court determined the officer had observed a traffic violation, he found the traffic stop was reasonable under the Fourth Amendment and denied defendant's motion to suppress the evidence.

Rubalcava-Roacho spends much of his argument on this issue complaining about Cline's possible subjective motivations in initiating the traffic stop.

-7-

Whether a traffic stop is reasonable under the Fourth Amendment turns on whether an officer has reasonable suspicion a motorist "violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (quotation omitted). Once an officer observes a traffic violation, any subjective motivations he had for following the vehicle or conducting the stop have no bearing on the Fourth Amendment reasonableness inquiry. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Cervine*, 347 F.3d 865, 870 (10th Cir. 2003) ("[The traffic] violation provided the troopers with reasonable suspicion to stop Mr. Cervine's car. The fact that the troopers had other motivations for stopping Mr. Cervine has no bearing upon this review.").

The reasonableness of the stop, therefore, turns on whether Cline witnessed a traffic violation before he stopped the RV. *See Cervine*, 347 F.3d at 870. The district court ultimately found Cline's version of the events to be more believable. Based on our review of the record and given our deferential standard of review, we see no reason to disturb the district court's credibility determination. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, [Federal Rule of Civil Procedure] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and

tone of voice that bear so heavily on the listener's understanding of and belief in what is said."); *see also United States v. Toro-Pelaez*, 107 F.3d 819, 824 (10th Cir. 1997) ("Although the troopers' testimony is at odds with that of the defendant's witness, when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quotation omitted)). The district court did not err in denying the motion to suppress.

B. *Sufficiency of the evidence*

Rubalcava-Roacho argues his convictions for possession with intent to distribute cocaine and methamphetamine cannot stand because there was no evidence showing a connection or nexus between him and the drugs. We review the sufficiency of the evidence issues de novo, considering whether "viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Vallo*, 238 F.3d 1242, 1246-47 (10th Cir. 2001) (quotation omitted). "We must not weigh conflicting evidence or consider the credibility of the witnesses, but simply determine whether the evidence, if believed, would establish each element of the crime." *Id.* at 1247 (quotation and alteration omitted).

To establish possession with intent to distribute illegal substances in violation of § 841(a)(1), the Government must prove defendant (1) "possessed a controlled substance;" (2) "knew he possessed a controlled substance;" and

(3) "intended to distribute the controlled substance." *United States v. Harris*, 369 F.3d 1157, 1163 (10th Cir. 2004). "Possession may be actual or constructive." *Id.* (quotation omitted). "Constructive possession exists where the defendant has the power to exercise control or dominion over the item and may be established by circumstantial evidence." *United States v. Ramirez*, 479 F.3d 1229, 1250 (10th Cir. 2007) (quotations, citation and alteration omitted), *cert. denied*, 128 S. Ct. 1074 (2008). In cases involving narcotics, constructive possession is "an appreciable ability to guide the destiny of the drug." *Id.* (quotation omitted).

Rubalcava-Roacho claims his mere presence in the RV is insufficient to prove the required nexus. He asserts the testimony of the two co-defendants does not establish actual knowledge of his involvement in drug trafficking; for all they knew, "he was just an illegal alien being transported by them to Wichita." Aplt. Br. at 15-16. We see it differently.

The evidence in this case was sufficient. Garza-Sotelo's testimony provided sufficient nexus, if believed by the jury: Marquez offered to pay her $500 if she drove Rubalcava-Roacho to Wichita in the RV; Marquez told Garza-Sotelo Rubalcava-Roacho knew the way to Wichita, there were seventy pounds of marijuana in the RV, and Rubalcava-Roacho knew where the drugs were hidden. Garza-Sotelo asked where the drugs were hidden and Marquez told her she did not need to know. According to her Rubalcava-Roacho

-10-

was present during this conversation and did not deny knowing the location of the drugs and did not protest or deny he was part of the plan to take the drugs to Wichita. During the trip to Kansas, Rubalcava-Roacho told Garza-Sotelo he had worked for Marquez a few times before and he needed the money. Rubalcava-Roacho received several calls during the trip from Efrain, Marquez's associate. Garza-Sotelo testified Rubalcava-Roacho sat in the passenger's seat on the way to Wichita showing them the way. At one point, she asked where they were going in Wichita and Rubalcava-Roacho told her he would tell her when they got there. Also a jury could reasonably conclude Marquez would not leave his RV and included contraband in the possession of strangers.

This evidence and the reasonable inferences drawn from it were sufficient to link Rubalcava-Roacho to the drugs. He knew about the plan to drive the RV with the drugs to Kansas, he had worked for Marquez before, he knew where the drugs were hidden, he knew where they were to be delivered, and he provided driving directions. He had the ability to guide the destiny of the drugs, which supports a finding of constructive possession. *See Ramirez*, 479 F.3d at 1250. Further, the jury could properly infer from these facts Rubalcava-Roacho intended to distribute the cocaine and methamphetamine. *See United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004) ("[A] jury may infer intent to distribute from the possession of large quantities of drugs."). The evidence was sufficient to support the jury's verdict.

-11-

### III. Conclusion

We AFFIRM the district court's denial of Rubalcava-Roacho's motion to suppress and we AFFIRM Rubalcava-Roacho's convictions.

Entered for the Court

Terrence L. O'Brien
Circuit Judge